George GATTO, Petitioner,

v.

Robert HOKE, Superintendent of Eastern Correctional Facility, Respondent.

No. CV–89–3805 (CBA).

United States District Court, E.D. New York.

April 21, 1992.

George Gatto, pro se.

Charles J. Hynes, Kings County Dist. Atty., Brooklyn, NY, for respondent; Jay M. Cohen, Amy Appelbaum, Susan Bloch Marhoffer, Asst. Dist. Attys., Brooklyn, NY, of counsel.

## MEMORANDUM AND ORDER

AMON, District Judge.

### Introduction

Petitioner George Gatto seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254, alleging various constitutional infirmities in connection with his murder conviction.[1] For the reasons set forth below, the petition is denied in its entirety.

### Background

A. Procedural History

On June 17, 1986, after a jury trial in the Supreme Court of the State of New York, Kings County, petitioner was convicted on two counts of murder in the second degree pursuant to N.Y.Penal Law § 125.25(1), (3). He was sentenced to concurrent terms of imprisonment of twenty years to life. Peti-

tioner challenged his conviction on direct appeal raising four grounds: (1) his conviction was against the weight of the evidence; (2) the prosecutor deprived him of a fair trial by commenting on his post-arrest silence; (3) the court's unbalanced instruction concerning intent and its failure to charge the jury as to direct and circumstantial evidence deprived him of a fair trial; and (4) he was denied effective assistance of counsel because counsel failed to call him as a witness and failed to object to remarks made by the prosecutor during his summation.

On January 17, 1989, the Appellate Division, Second Department, affirmed the judgment of conviction. *People v. Gatto*, 146 A.D.2d 643, 536 N.Y.S.2d 851 (2d Dept. 1989). The Court of Appeals denied petitioner's application for leave to appeal on March 9, 1989, and again on April 13, 1989. *People v. Gatto*, 73 N.Y.2d 977, 540 N.Y.S.2d 1011, 538 N.E.2d 363 (Ct.App. 1989); *People v. Gatto*, 73 N.Y.2d 1015, 541 N.Y.S.2d 769, 539 N.E.2d 597 (Ct.App. 1989).

Petitioner subsequently filed the instant petition contending that his state court conviction must be set aside because: (1) he was denied his right to a fair trial due to the prosecutor's improper comments during summation on petitioner's post-arrest silence; (2) he was denied his right to a fair trial due to the prosecutor's improper and inflammatory summation in which he accused defense counsel and petitioner of fabricating a false defense, appealed to the sympathy of the jury, repeatedly commented on the veracity of his witnesses, and acted as an unsworn witness; and (3) he was denied effective assistance of counsel since defense counsel did not object to the prosecutor's comments on his post-arrest silence, did not object to other inflammatory summation comments and did not call petitioner as a witness at the trial.

---

1. This case was originally assigned to the late Honorable Mark A. Costantino and was subsequently transferred to the undersigned. The Court also notes that while this petition was pending Gatto escaped from the Eastern Correctional Facility and was a fugitive for a period of time.

## B. The Evidence at Trial

The State presented the testimony of Maria Gonzalez, several police officers who arrived at the scene after the murder and of Paul Stewart, a business associate of the petitioner.

Gonzalez testified that at approximately 4:30 p.m. on September 19, 1984, she was at home with her live-in boyfriend, Pompeo Bekir. Gonzalez answered her door and found the petitioner standing there dressed like a parcel delivery person and carrying a package addressed to Gonzalez. She signed for the package and then went to answer her telephone. (T. at 755–768).[2] Gonzalez then returned to the door where petitioner pulled a gun from his waist and forced his way into the apartment. Petitioner then pushed Gonzalez and Bekir into the kitchen where he tied Gonzalez's hands behind her back. (T. at 759–769). Petitioner pointed the gun at the two and asked "where is it", to which he received no response. (T. at 760, 770, 1021). Bekir then moved towards Gatto and struck him in the stomach. The two men struggled in the kitchen and the gun went off. They continued to struggle in the hallway, out of Gonzalez's view, when Gonzalez heard a second shot followed by silence. Petitioner then returned to the kitchen with the gun in his hand and told Gonzalez "he won't be giving me much trouble. Now where is it." (T. at 760–61, 771–74).

The door buzzer then rang and Gatto untied Gonzalez and had her open the door at gun point. Jim McNulty, a friend of Gonzalez's, then entered and petitioner then tied McNulty and Gonzalez together. (T. at 761, 775–76a). Petitioner continued to search the apartment and then untied Gonzalez, took her to a bedroom and asked "where is it". Gonzalez pointed to her pocketbook, at which point petitioner emptied the pocketbook and retied Gonzalez, leaving her in her son's room.

Police officers began arriving on the scene at approximately 5:35 p.m. and se-cured the area around the apartment. The door to the apartment opened shortly thereafter and McNulty came out with rope on his arms and his mouth gagged. Petitioner came out behind him and was neither tied nor gagged. He was sweating profusely and his shirt was stained with blood.[3] (T. at 20, 56, 392–93). Police found Gonzalez tied up inside the apartment. Bekir was found dead with a gun on his chest. (T. at 78, 101–02).

The box Gonzalez said petitioner carried into the apartment was found to contain approximately one thousand dollars in cash, two handguns, two or three bags of cocaine, which police valued at between fifteen and fifty thousand dollars, and nine magazines belonging to Paul Stewart, Gonzalez's business associate in the roofing industry. Stewart testified that the company was not working in Gonzalez's building or in the area, although associates often take on outside work. (T. at 397, 406, 467, 767, 919, 1115–26). In addition, police recovered a set of keys to a rental car which had been rented by Stewart for petitioner's use. Inside the car was petitioner's notebook and a diagram of Gonzalez's home, along with notations on the number and ages of the occupants. (T. at 31–33, 278–280, 407–410, 1123–1129).

At the time of his arrest petitioner, after waiving his *Miranda* rights, told police that his name was George Martaurano and that he had been driven to Gonzalez's by a co-worker in order to pay for some cocaine he had previously purchased and in order to get more cocaine. (T. at 141–42). He later changed his story and said that he had driven himself to the apartment. (T. at 283). He stated that he arrived at the apartment and gave the woman he was purchasing the cocaine from the money he owed her and then asked for more cocaine. As she turned away petitioner felt a sharp pain in the back of his head and was knocked unconscious. He said he remained unconscious until he awoke and saw anoth-

---

**2.** References prefixed with "T.", are to pages of the trial transcript.

**3.** At trial the parties stipulated that the blood on the shirt matched Bekir's blood to the exclusion of 93 percent of the population. (T. at 184, 1162).

er man lying next to him, tied and gagged. Petitioner told police that he untied the man and exited the apartment where police were waiting. (T. at 141–42).

## Discussion

### A. Exhaustion and Procedural Bar

■■ Under 28 U.S.C. § 2254(b), applicants for habeas corpus relief ordinarily must "exhaust[ ] the remedies available in the courts of the State." The exhaustion requirement is satisfied when the federal claim has been "fairly presented" to the highest court of the state. *Daye v. Attorney General of New York*, 696 F.2d 186, 191 (2d Cir.1982) (en banc), *cert. den.*, 464 U.S. 1048, 104 S.Ct. 723, 79 L.Ed.2d 184 (1984) (citing *Wilwording v. Swenson*, 404 U.S. 249, 92 S.Ct. 407, 30 L.Ed.2d 418 (1971) (per curiam)). In order to have fairly presented his federal claim to the state courts, the petitioner must demonstrate that he informed the state court of both the factual and legal premises of the claim he now asserts in federal court. *Id.* (citing *Picard v. Connor*, 404 U.S. 270, 275–76, 92 S.Ct. 509, 512–13, 30 L.Ed.2d 438 (1971)).

■ In general, the rule requiring exhaustion of remedies is not a jurisdictional requirement; rather, its exercise relies upon interests of comity between state and federal systems of justice. *Granberry v. Greer*, 481 U.S. 129, 107 S.Ct. 1671, 95 L.Ed.2d 119 (1987). Adherence to the exhaustion doctrine serves to protect the state court's role in the enforcement of federal law and to prevent disruption of state judicial proceedings. *Rose v. Lundy*, 455 U.S. 509, 518, 102 S.Ct. 1198, 1203, 71 L.Ed.2d 379 (1982). With these goals in mind, the United States Supreme Court has held that if any part of a habeas petition is unexhausted, the entire petition must be dismissed to enable petitioner to return to state court to exhaust his claims or to amend or resubmit the petition presenting only exhausted claims. *Id.* at 520, 102 S.Ct. at 1204.

Petitioner's first claim is that he was denied the right to a fair trial due to the prosecutor's improper comments on his post-arrest silence during summation. Since this claim was raised by petitioner at the state level, it is therefore exhausted.

Petitioner's second claim alleges that he was denied the right to a fair trial due to the prosecutor's improper and inflammatory summation in which he improperly accused petitioner and defense counsel of fabricating a false defense, improperly appealed to the sympathy of the jury, commented repeatedly on the veracity of petitioner's witnesses and acted as an unsworn witness. Respondent contends that petitioner's second claim is improperly before this Court because petitioner failed to raise this claim in state court.

Respondent is correct that petitioner failed to raise the second fair trial claim at the state level. The record of the state proceedings reveals that this issue was neither raised by petitioner before the Appellate Division, Second Department, and the Court of Appeals nor addressed by these courts. *Gatto*, 536 N.Y.S.2d at 852; Application for Leave to Appeal (Feb. 8, 1989); *Gatto*, 540 N.Y.S.2d at 1011, 538 N.E.2d at 363; *Gatto*, 541 N.Y.S.2d at 769, 539 N.E.2d at 597. The record establishes that petitioner contended at the state level that he was denied effective assistance of counsel because his attorney failed to object to the prosecutor's inflammatory and improper summation and failed to call him as a witness, but he did not allege that he was denied a fair trial due to the prosecutor's improper and inflammatory summation. Therefore, this Court finds that petitioner has failed to exhaust his state remedies as regards this claim.

Petitioner's third claim is that he was denied effective assistance of counsel since defense counsel did not object to the prosecutor's comments on his post-arrest silence, did not object to other inflammatory summation comments and did not call petitioner as a witness at the trial. Respondent alleges, however, that one aspect of petitioner's third claim—that he was denied effective assistance of counsel due to his attorney's failure to object to the prosecutor's comments on his post-arrest silence—is improperly before this Court, since petitioner failed to raise it in state court.

It appears from the record that petitioner alleged in state court that the prosecutor's alleged *Doyle* violation [4] during his summation denied him a fair trial, but he did not specifically contend that his attorney's failure to object to these comments deprived him of effective assistance of counsel. However, petitioner did raise in the state court appeal a claim that he was denied effective assistance of counsel due to his attorney's failure to object to the prosecutor's "improper remarks" during summation. Although petitioner did not specifically single out the alleged *Doyle* violation as one of these "improper remarks," it is clear to the Court that petitioner presented both the factual and legal basis of his ineffective assistance claim to the state court. Petitioner made known to the state court that he believed he had been denied effective assistance of counsel because of his attorney's failure to object to certain remarks of the prosecutor during summation. He also made known that he believed that there had been a *Doyle* violation during the prosecutor's summation. The fact that petitioner did not elaborate on this point is not significant. The state court had before it the factual and legal premise of petitioner's claim. This Court finds, therefore, that petitioner's ineffective assistance of counsel claim is exhausted.

■ In the instant case petitioner has presented this Court with a "mixed" habeas corpus petition containing both exhausted and unexhausted claims. *Ramos v. Walker*, 744 F.Supp. 422, 425 (E.D.N.Y. 1990) (a "mixed" habeas corpus petition is one that includes both exhausted and unexhausted claims). Since a mixed petition does not satisfy the habeas corpus exhaustion requirement, it should ordinarily be dismissed. *Rose*, 455 U.S. at 520, 102 S.Ct.

at 1204; *Grady v. Le Fevre*, 846 F.2d 862 (2d Cir.1988). However, the United States Court of Appeals for the Second Circuit recently held in *Grey v. Hoke* that "[f]or exhaustion purposes, 'a federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred.'" 933 F.2d 117, 120 (2d Cir.1991), (quoting *Harris v. Reed*, 489 U.S. 255, 263 n. 9, 109 S.Ct. 1038, 1043 n. 9, 103 L.Ed.2d 308 (1989)). The court recognized that a petitioner in such a case no longer has "remedies available in the courts of the state" within the meaning of 28 U.S.C. § 2254(b).

■ Here, New York procedural rules plainly bar petitioner from attempting to raise his second claim asserted here, that he was denied a fair trial based upon the content of the prosecutor's summation, before the New York Court of Appeals. Petitioner cannot again seek leave to appeal in the Court of Appeals since he has already made the one request for criminal leave to appeal to which he is entitled. *See* N.Y.Comp.Codes R. & Regs. tit. 22, § 500.10 (1986). Petitioner is also barred from seeking collateral review of these claims because he unjustifiably failed to raise these issues in his perfected direct appeal. N.Y.C.P.L. § 440.10(2)(c) (McKinney 1983) [5]; *People v. Cooks*, 67 N.Y.2d 100, 500 N.Y.S.2d 503, 491 N.E.2d 676 (Ct. App.1986). Based on the trial record, both of these claims could have been raised on appeal.

Since no purpose would be served by requiring petitioner to return to state court for further proceedings, the Court holds that petitioner no longer has remedies available in New York state courts under

**4.** The due process clause of the Fourteenth Amendment prohibits the prosecution from introducing testimony or making reference at trial to a defendant's invocation of his right to remain silent. *Doyle v. Ohio,* 426 U.S. 610, 618–19, 96 S.Ct. 2240, 2245, 49 L.Ed.2d 91 (1976). *See* discussion infra.

**5.** C.P.L. § 440.10(2) states that notwithstanding the provisions of subdivision one, the court must deny a motion to vacate a judgment when:

(c) Although sufficient facts appear on the record of the proceedings underlying the judgment to have permitted, upon appeal from such judgment, adequate review of the ground or issue raised upon the motion, no such appellate review or determination occurred owing to the defendant's unjustifiable failure to take or perfect an appeal during the prescribed period or to his unjustifiable failure to raise such ground or issue upon an appeal actually perfected by him.

28 U.S.C. § 2254(b), and that he has met the statutory exhaustion requirement. *See Harris v. Reed*, 489 U.S. 255, 263 n. 9, 109 S.Ct. 1038, 1043 n. 9, 103 L.Ed.2d 308 (1989); *Castille v. Peoples*, 489 U.S. 346, 351, 109 S.Ct. 1056, 1060, 103 L.Ed.2d 380 (1989); *Engle v. Isaac*, 456 U.S. 107, 125–26 n. 28, 102 S.Ct. 1558, 1570 n. 28, 71 L.Ed.2d 783 (1982). However, petitioner's failure to raise claim two at any time on appeal bars him from litigating the merits in this federal habeas proceeding, absent a showing of cause or prejudice that would alter this holding. *Wainwright v. Sykes*, 433 U.S. 72, 87–91, 97 S.Ct. 2497, 2506–08, 53 L.Ed.2d 594 (1977) (procedural default will bar federal habeas review of federal claim, unless petitioner can show "cause" for the default and "prejudice attributable thereto"). Since petitioner has made no showing of cause or prejudice, his claim that he was denied a fair trial due to the prosecutor's improper and inflammatory summation is properly dismissed without reaching the merits.[6]

### B. Petitioner's Exhausted Claims

#### 1. *Prosecutor's Comment on Post–Arrest Silence*

Petitioner's first claim is that the prosecutor referred to petitioner's post-arrest silence[7] during his summation to the jury in violation of his constitutional rights to due process and to a fair trial. It is well settled that the prosecution is prohibited under the due process clause of the Fourteenth Amendment from introducing testimony or making reference at trial to a defendant's invocation of his right to remain silent. *Doyle v. Ohio*, 426 U.S. 610, 618–19, 96 S.Ct. 2240, 2245, 49 L.Ed.2d 91 (1976).

■ In *Doyle v. Ohio* the United States Supreme Court held that use of a defendant's post-arrest, post-*Miranda* silence for purposes of impeachment is a constitutional violation of a defendant's right to due process. 426 U.S. at 618, 96 S.Ct. at 2245. Furthermore, the Court implied that its

holding encompassed a harmless error exception. *Id.* at 619, 96 S.Ct. at 2245. *See also Hawkins v. Le Fevre*, 758 F.2d 866, 877 (2d Cir.1985); *Broadwater v. Dunham*, 479 F.Supp. 1097 (E.D.N.Y.1979). An error of constitutional dimension may be held to have been harmless if the government can show " 'beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.' " *Satterwhite v. Texas*, 486 U.S. 249, 258, 108 S.Ct. 1792, 1798, 100 L.Ed.2d 284 (1988) (quoting *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967)). Appraisal of an error's impact depends on the nature of the violation in the context of a particular factual setting. *Hawkins*, 758 F.2d at 878.

■ Petitioner alleges that the prosecutor twice commented on his post-arrest silence during summation. First, petitioner asserts that the following comments of the prosecutor regarding his post-arrest interview were improper.

And why does a person make up different stories as he goes along? Just except [sic] that if you are innocent of any crime, and certainly, innocent of murder, why do you make up different stories as you go along? Because if one doesn't hold water, you try something else. Neither of those holds any weight. Ask yourselves why somebody doesn't just tell it like it was at the beginning if they *are innocent of any murder.* And the only why that you come up with is because you are not innocent of any murder. Otherwise, you would have heard the story about some struggle.... You would hear, hey, this guy pulled a gun on me. I was fighting for my life and he got shot. And I was protecting myself because the guy was going to kill me. That's what I submit you would hear if that were the case. If you were innocent and that's what happened, I submit, and that's why you did not hear that from Mr. Gatto on that night.

(T. at 1300–01).

Second, petitioner claims that the prosecutor's implication that he and his counsel

---

**6.** In any event, it is clear that this claim is without merit. *See* § C infra.

**7.** Post-arrest silence as used herein includes petitioner's failure to take the stand at his trial.

fabricated a false defense were an improper comment on his post-arrest silence.

> [Detective Mattera] knows that Mr. Gatto, if he is truly innocent, isn't going to say, okay, I think I'll do 25 years to life for murder. I'm not going to say anything, I'm not going to tell anyone about the little arrangement that took place between Mattera and Gonzales. I'll just sit back and ho, ho, ho, and I'll get convicted for murder, won't open my mouth.

(T. at 1304–05).

The prosecutorial comments challenged by the petitioner do not rise to the level of a constitutional violation under *Doyle.* Considered in context, the first portion of the prosecutor's summation cited by petitioner was not a comment on petitioner's silence but on the implausibility of the contradictory and inconsistent statements that were made. In *Anderson v. Charles,* the Supreme Court expressly held that *"Doyle* does not apply to cross-examination that merely inquires into prior inconsistent statements."* 447 U.S. 404, 408, 100 S.Ct. 2180, 2182, 65 L.Ed.2d 222 (1980).

The second section of the prosecutor's summation referenced by petitioner was likewise not constitutionally impermissible. Petitioner claims that by these remarks the prosecutor alleged that petitioner would not have sat back in silence had he truly been aware of a frame-up by Mattera. However, petitioner takes these comments out of context. According to the trial transcript, the prosecutor was not questioning why petitioner did not testify, or why he did not make statements to the police, but was legitimately questioning the validity of the suggestion made in the summation of petitioner's counsel that petitioner was framed by Detective Mattera.[8]

Thus, this Court finds that the prosecutor's remarks during summation did not deprive petitioner of his due process right to a fair trial. Moreover, even if the prosecutor's statements were somehow improper, these comments constitute harmless error. A review of the trial transcript and record shows beyond a reasonable doubt that petitioner would have been convicted absent the prosecutor's remarks. *See U.S. v. Tutino,* 883 F.2d 1125, 1136 (2d Cir. 1989).

As discussed above, the government offered the testimony of Gonzalez, who testified that petitioner bound her and then engaged in a struggle with Bekir. Gonzalez testified that she then heard a gunshot and then saw petitioner return to the area where she was restrained proclaiming in reference to Bekir, "he won't be giving me much trouble." Police officers at the scene [9] testified that approximately fifteen minutes after their arrival the door to the apartment opened and McNulty and petitioner exited. McNulty had remnants of rope on his hands and his mouth was gagged with tape. Petitioner was not bound, and his shirt was stained with blood. The parties stipulated that the blood on petitioner's shirt matched Bekir's to the 93 percent exclusion of the general population. This direct and indirect evidence supports the jury's conclusion that petitioner was the person who shot Bekir.

The jury also had before it petitioner's conflicting statements about how he arrived at the scene. Petitioner originally tried to hide the fact that he had driven to the scene in a rented car. That car was later found by police and inside it was a notebook which contained information about Gonzalez and a diagram of her home. The jury could properly use this evidence to infer that petitioner had planned his actions and was not simply there to buy cocaine.

---

8. Prior to making the remarks cited by the petitioner, the prosecutor stated:

    You heard the testimony that they thought it was a hostage situation.... There were officers all over the place. All over the place there were high ranking officials. And, Mattera, boy, he has a lot of guts to come in there and clean out that apartment for himself, what a guy. But you know what, if Mattera did that, why in the world, why in the world would he, together with Maria Gonzalez, frame an innocent guy? Why would he want to do that?
    Transcript at 1304.

9. Testimony on this subject was given by Officer Michael Ferrante, Officer Cornelius Carter, Sergeant Thomas Sullivan and Detective Charles Mattera.

A review of this record convinces the Court that not only were the prosecutor's statements not violative of petitioner's rights, but that even absent these statements the jury would have reached the same conclusions based on the evidence before it. Clearly the prosecutor was allowed to comment both on petitioner's post-arrest statement to police and on the improbability of the petitioner's theory that Mattera stole money from the crime scene and conspired with Gonzalez to frame Gatto. Even if the Court were to find these particular statements improper, it is plain that a sanitized version of the summation would result in the same verdict.[10]

### 2. Ineffective Assistance of Counsel

█ Petitioner also contends that he was denied effective assistance of counsel, since defense counsel did not object to the prosecutor's comments on his post-arrest silence and other inflammatory statements, and did not call petitioner as a witness. To obtain federal habeas relief on an ineffective assistance of counsel claim petitioner:

> must show (1) that counsel's performance was so deficient and counsel's errors were so serious that he or she was not functioning as "counsel" guaranteed by the Sixth Amendment; and (2) that counsel's deficient performance prejudiced petitioner's defense so seriously that it "deprive[d] the defendant of a fair trial, a trial whose result is reliable."

*Cuevas v. Henderson,* 801 F.2d 586, 589 (2d Cir.1986) (quoting *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984)). In assessing the reasonableness of counsel's action, the

Supreme Court in *Strickland* cautioned that "judicial scrutiny of counsel's performance must be highly deferential," and that defendant must overcome the presumption that the challenged action "might be considered sound trial strategy." 466 U.S. at 689, 104 S.Ct. at 2065. *See also Cuevas,* 801 F.2d at 589.

█ Petitioner has failed to meet this burden, because he has not demonstrated that counsel's performance was deficient or prejudicial to him. First, petitioner contends that he was denied the effective assistance of trial counsel because counsel failed to call him as a witness.[11] A defense counsel's "decision as to whether or not to call any particular witness is a tactical decision which the courts in this Circuit are loathe to second-guess." *Brown v. De Fillipis,* 717 F.Supp. 172, 180 (S.D.N.Y.1989) (citing *United States v. Nersesian,* 824 F.2d 1294, 1321 (2d Cir.1987), *cert. den.,* 484 U.S. 958, 108 S.Ct. 357, 98 L.Ed.2d 382 (1987)).

Although the record discloses that petitioner's counsel made several representations to the trial court that petitioner would take the stand, petitioner did not testify as he had previously done in an earlier trial which ended in a mistrial. Based on a thorough review of the trial transcript this Court finds the decision not to call petitioner as a witness was a strategic one based on Counsel's assessment that Maria Gonzalez, the State's primary witness, had not appeared credible and on the disappearance of Jim McNulty, another critical state witness. Contrary to petitioner's argument, his testimony was not essential to negate

---

**10.** In addition, any potential prejudice by the prosecutor's remarks was diminished when the trial judge, as is customary, told the jury during the trial and in his jury instructions that the prosecutor's argument was not evidence. The prosecutor also made this point to the jury:

> I want to emphasize that I'm going to be making certain arguments to you based upon how I view the evidence, how I view what the issues are in this particular case.... Perhaps you find them reasonable. You may adopt them as yours.... You've got to decide what makes sense to you. And if it doesn't make sense to you, then disregard what I have to say.

(T. at 1273–75).

**11.** The Court notes that petitioner has raised the issue of his failure to testify, both before the state court and in this petition, as a sixth amendment claim and not as a due process violation. *See, e.g., Rock v. Arkansas,* 483 U.S. 44, 49–53, 107 S.Ct. 2704, 2707–10, 97 L.Ed.2d 37 (1987) (criminal defendant has a constitutional right to testify on his own behalf); *Jones v. Barnes,* 463 U.S. 745, 751, 103 S.Ct. 3308, 3312, 77 L.Ed.2d 987 (1983) (only the defendant is empowered to waive right to testify).

the testimony of Gonzalez. Rather, the record reveals that defense counsel skillfully attempted to undermine the credibility of this witness by cross-examining her on inconsistencies in her testimony, and by revealing her involvement with the decedent's allegedly extensive drug business. (T. at 788, 1073, 1204–56). *See also People v. Gatto*, 536 N.Y.S.2d at 852. In addition, this Court notes that petitioner's case was, in effect, strengthened by his counsel's tactics, since the trial judge permitted wide latitude in his counsel's questioning Gonzalez and another critical witness on the premise that petitioner would be called. As a result, the judge admitted testimony regarding the lifestyle of the deceased and his propensity for violence, as well as testimony about a possible frame-up by the detectives at the scene of the crime. (T. at 1074–76). This testimony was adduced without petitioner facing the potentially serious downside of cross-examination.

Second, petitioner argues that his attorney improperly failed to object to several comments made by the prosecutor during his summation. Aside from the alleged *Doyle* violation, Gatto argues that his attorney should have objected to a number of improper and inflammatory comments made by the prosecutor, including the prosecutor's: (1) accusation that petitioner was fabricating a false defense; (2) appeals to the jury for sympathy; (3) comments on the witnesses veracity; and (4) arguing of facts not in evidence.

Initially, as to petitioner's claim that his attorney failed to object to alleged *Doyle* violations, as the Court stated above, it finds no *Doyle* violation in this case. It is thus clear that even if petitioner's attorney's failure to object was in error petitioner is unable to demonstrate any prejudice to him given that this Court has found that there was no constitutional violation to object to. As to the other comments Gatto points to, the Court after reviewing the record is not convinced that the prosecutor's remarks which are the subject of Gatto's argument, were improper or inflammatory. Rather, they were simply part of an argumentative summation. *See* § C *infra*.

Moreover, counsel's failure to object to the prosecutor's summation represents his tactical decision to avoid underscoring the prosecutor's statements so as to draw the jury's attention to them. *See U.S. v. Grunberger*, 431 F.2d 1062, 1068–69 (2d Cir.1970). An attorney who presents a well-grounded, but ultimately unsuccessful defense, will not later be held to have provided ineffective assistance of counsel. *Trapnell v. United States*, 725 F.2d 149, 155 (2d Cir.1983).

Overall, the record establishes that trial counsel competently represented petitioner at trial and afforded him "meaningful representation" as guaranteed by the United States Constitution. *Trapnell*, 725 F.2d at 155. Petitioner has failed to show how his testimony or the prosecutor's statements would have altered the outcome of the proceeding. Thus, this Court finds that petitioner has failed to establish "that counsel's performance was so deficient and counsel's errors were so serious that he ... was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Cuevas*, 801 F.2d at 589.

## C. Right to a Fair Trial

Finally, the Court notes that even if it did reach the merits of petitioner's second claim, it would find the claim to be without merit. The right to a fair trial is a fundamental liberty secured by the Fourteenth Amendment and the presumption of innocence is a basic component of a fair trial. *Estelle v. Williams*, 425 U.S. 501, 503, 96 S.Ct. 1691, 1692, 48 L.Ed.2d 126 (1976). To implement the presumption, courts must be alert to factors that may undermine the fairness of the fact-finding process. *Id.* In doing so, the court must consider whether a particular factor "was so inherently prejudicial as to pose an unacceptable threat to defendant's right to a fair trial. If the challenged practice is not found inherently prejudicial and if the defendant fails to show actual prejudice, the inquiry is over." *Holbrook v. Flynn*, 475 U.S. 560, 572, 106 S.Ct. 1340, 1347, 89 L.Ed.2d 525 (1986).

■ Initially, the Court is unconvinced that the complained of statements were improper. Most of the statements were fair response to arguments advanced by petitioner's counsel in his summation. As to petitioner's claim that the prosecutor was stating facts not in evidence during his summation, the Court finds that most of the comments were appropriate requests for the jury to draw inferences based upon facts in evidence. Moreover, even if the comments had a questionable evidentiary basis, any prejudice to petitioner was cured when the trial court instructed the jury that "[t]he arguments, remarks and summations of counsel are not in evidence.... You must take the evidence from the mouths of the witnesses as you've heard them and from the exhibits." (T. at 1384–85).

■ In any case, even if the Court were to assume that the prosecutor's remarks were improper it does not follow that a constitutional violation has occurred. To constitute a constitutional violation, a prosecutor's comments must "so infect[ ] the trial with unfairness as to make the resulting conviction a denial of due process." *Gonzalez v. Sullivan,* 934 F.2d 419, 424 (2d Cir.1991) (quoting *Donnelly v. De-Christoforo,* 416 U.S. 637, 643, 94 S.Ct. 1868, 1871, 40 L.Ed.2d 431 (1974)). A criminal conviction will not be overturned on the basis of a prosecutor's remarks in an otherwise fair proceeding. *United States v. Young,* 470 U.S. 1, 11, 105 S.Ct. 1038, 1044, 84 L.Ed.2d 1 (1985). Prosecutorial misconduct during summation must cause "substantial prejudice" to the defendant in order for a court to grant reversal on that ground. *United States v. Tutino,* 883 F.2d 1125, 1136 (2d Cir.1989), *cert. den.,* 493 U.S. 1081, 110 S.Ct. 1139, 107 L.Ed.2d 1044 (1990). Indeed, prosecutorial statements, even if improper or "universally condemned," usually are not enough to warrant granting a petition. *Donnelly v. De-Christoforo,* 416 U.S. 637, 643, 94 S.Ct. 1868, 1871, 40 L.Ed.2d 431 (1974).

■ In order to determine whether petitioner was substantially prejudiced by the prosecutor's comments, this Court must consider the prosecutor's conduct, what measures, if any, the trial court used to cure the prejudice, and whether conviction was certain absent the prejudicial conduct. *See United States v. Modica,* 663 F.2d 1173, 1181 (2d Cir.1981), *cert. den.,* 456 U.S. 989, 102 S.Ct. 2269, 73 L.Ed.2d 1284 (1982).

Applying this standard to the instant case, the Court finds that the comments were not prejudicial to the defendant, that whatever prejudice was incurred was remedied by the Court's instructions, and that, as discussed above, it is certain beyond a reasonable doubt that petitioner would have been convicted absent the complained of statements. Accordingly, even if this claim was exhausted and not procedurally barred, the Court finds it to be without merit.

*Conclusion*

For the reasons stated above, the court finds that petitioner's claims are without merit and petitioner's application for a writ of habeas corpus is hereby DENIED.

SO ORDERED.