Michael THOMPSON, Petitioner–
Appellant,

v.

Walter KELLY, Superintendent,
Attica Correctional Facility,
Respondent–Appellee.

No. 997, Docket 93–2618.

United States Court of Appeals,
Second Circuit.

Submitted Jan. 20, 1994.

Decided April 18, 1994.

Samuel F. Prato, Rochester, NY, for petitioner-appellant.

Kevin M. Dillon, Dist. Atty. of Erie County, Buffalo, NY (John J. DeFranks, Eleanor T. Kubiniec, Asst. Dist. Attys., Buffalo, NY, of counsel), for respondent-appellee.

Before: LUMBARD, VAN GRAAFEILAND, and McLAUGHLIN, Circuit Judges.

LUMBARD, Circuit Judge:

Michael Thompson appeals from a judgment entered August 19, 1993 in the Western District of New York (Skretny, *J.*) dismissing his 28 U.S.C. § 2254 petition for a writ of habeas corpus. In 1980, Michael was jointly tried with his brother Mark in New York Supreme Court, Erie County for a 1979 Buffalo clothing store robbery in which four people were stabbed, two fatally. Neither Michael nor Mark testified. Both defendants' confessions were introduced at trial. Michael asserted in his § 2254 petition in the district court that the introduction of Mark's confession violated the Sixth Amendment's Confrontation Clause, because Mark's confession inculpated Michael, and Mark was unavailable for cross-examination. The district court held that the Confrontation Clause was violated, but concluded that the error was harmless. We agree and affirm.

I.

At trial, the government introduced evidence to show that Paul and Sidney Fink were brothers and co-owners of People's Clothing Store in Buffalo. Dezi Franklin worked at the store. On the morning of December 27, 1979, three men entered the store. Shortly after entering, one of them brandished a sawed-off shotgun, grabbed Franklin around the neck, and threatened to kill him. The Finks pleaded not to be harmed and offered the store's money. The men emptied the cash register and took a bank bag marked "People's Clothing." One of the men declared, "We're not finished with these guys yet." They ordered the Finks and Franklin to the back of the store and to lie face down on the floor. A customer, Essie Hall, entered the store and was ordered to join the other victims. The victims' hands and feet were tied with electrical cord. One of the men pulled out a long knife, put it to Paul Fink's throat and said, "You all know what's coming next." He stabbed all four victims multiple times as they pleaded for mercy. The men then left. On their way out, one of them again threatened to shoot Franklin. Hall freed himself and untied Franklin and Paul Fink. Paul and Sidney Fink later died of their wounds.

Franklin identified as one of the robbers Matthew Lemon, who had been a regular customer and had an account at the store. Lemon was arrested, and named Michael and Mark Thompson as accomplices. When police went to Mark's home to arrest him and Michael, they found neither, but did find and seize a loaded sawed-off shotgun, a knife, a clothing bag, some clothing and a bank bag marked "People's Clothing." [1] The police later located and arrested Michael and Mark. Each was questioned, and each signed a written confession shortly after midnight on December 28, 1979.

In Michael's confession, he said that he did not know why the victims were stabbed—it just happened. He and his accomplices went to the store to rob it. He did not discuss in advance with his accomplices what should be done if they were resisted or recognized; he

---

**1.** Michael unsuccessfully challenged the constitutionality of the seizure in his state court appeal and in the district court. He does not pursue that issue on this appeal.

walked behind the other two on the way to the store and did not hear what they were saying. When they entered the store, Mark had the sawed-off shotgun and Lemon had the knife. Michael took the money from the cash register. He and Mark forced the victims to the back of the store. Michael tied all four of them with cord he brought from Mark's home. It was Michael's own idea to tie them. Mark did the stabbings. Michael did not know where Mark got the knife. Michael did not try to stop the stabbings.

According to Mark's confession, Lemon stated before they headed to the store that he would have to kill the people in the store because they would recognize him. Michael and Mark were to tie the victims, and Lemon was to kill them. Mark carried the sawed-off shotgun, and it was loaded. Lemon had the knife. Mark took the money from the cash register, and Lemon took the bank bag. Michael tied two victims and Mark tied one, using electrical cord that Michael found. Mark did not know how the fourth victim was tied. Lemon did the stabbings.

Michael and Lemon moved to sever their trials. The court granted Lemon's motion but denied Michael's. Michael and Mark pleaded not guilty and were jointly tried before a jury. Neither testified. The government based its case on testimony of surviving victims, testimony of police and experts, the evidence seized at Mark's home, and the confessions, both of which were read to the jury. Defense counsel admitted Michael's participation in the robbery, but argued that Michael lacked any intent to commit crimes other than robbery or to harm anyone.

The jury convicted Michael and Mark of felony murder, manslaughter, robbery, attempted murder and second degree assault. Michael was sentenced to prison terms of twenty-five years to life on each of the felony murder counts, to be served consecutively; eight and one-third years to twenty-five years on each of the attempted murder counts, to be served consecutively to each other and to the felony murder terms; eight

and one-third to twenty-five years on each of the manslaughter counts, to be served concurrently with the felony murder terms; two and one-third to seven years on each of the assault counts, to be served concurrently with the attempted murder terms; and eight and one-third to twenty-five years on the robbery count, to be served concurrently with one of the felony murder terms.

 Michael appealed his conviction on the ground that the introduction of Mark's confession violated the Confrontation Clause of the Sixth Amendment to the federal Constitution. The introduction of a non-testifying co-defendant's confession violates the Confrontation Clause when the confession inculpates the defendant, because the co-defendant is unavailable for cross-examination. *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). Mark did not testify, and therefore was unavailable for cross-examination.

The Appellate Division, Fourth Department held that the Confrontation Clause was violated, and that the error was not harmless to Michael's manslaughter, attempted murder and assault convictions. *People v. Thompson*, 156 A.D.2d 961, 550 N.Y.S.2d 757 (4th Dep't 1989), *leave to appeal denied*, 76 N.Y.2d 797, 559 N.E.2d 696, 559 N.Y.S.2d 1002 (1990). Michael's confession stated that he intended only to rob the store. The introduction of Mark's confession supplied otherwise lacking evidence of Michael's intent. The court overturned Michael's manslaughter, attempted murder and assault convictions.[2]

But the court upheld Michael's felony murder conviction. The court found the introduction of Mark's confession harmless to the felony murder conviction because Michael's own confession "negated an element of the affirmative defense to felony murder." The court did not specify which element was negated. The New York Court of Appeals denied Michael's request for leave to appeal.

Michael filed a petition for habeas corpus in the district court. Judge Skretny denied

---

**2.** The manslaughter conviction was overturned for the additional reason of an irregularity in the

jury's reporting of the verdict.

the petition, finding that the admission of Mark's confession was harmless error because Michael could not have proved an element of a felony murder affirmative defense: that he had no reasonable ground to believe an accomplice was armed with a deadly weapon. The district court held that the knife was a deadly weapon; that trial evidence suggested that Michael knew of the knife before the robbery; and that Michael's continued participation after he saw the knife negated his claim that he was previously unaware of it.

## II.

The state concedes that the admission of Mark's confession violated the Confrontation Clause. The question is whether the admission of the confession was harmless error. We agree with the Appellate Division and the district court that it was. The evidence independent of Mark's confession would have ensured that a reasonable jury would not find three of the four required elements of the felony murder affirmative defense: (1) that Michael did not aid the commission of the homicide; (2) that Michael had no reasonable basis to believe that his accomplices were armed with deadly weapons; and (3) that Michael had no reasonable basis to believe that his accomplices intended to inflict serious injury.

■ New York law provides an affirmative defense to felony murder for a defendant who proves by a preponderance of the evidence that he:

(a) Did not commit the homicidal act or in any way solicit, request, command, importune, cause or aid the commission thereof; and

(b) Was not armed with a deadly weapon, or any instrument, article or substance readily capable of causing death or serious physical injury and of a sort not ordinarily carried in public places by law-abiding persons; and

(c) Had no reasonable ground to believe that any other participant was armed with such a weapon, instrument, article or substance; and

(d) Had no reasonable ground to believe that any other participant intended to engage in conduct likely to result in death or serious physical injury.

N.Y. Penal Law § 125.25(3) (McKinney 1987). A court may refuse to submit the defense to the jury—and constitutional error undermining the defense is likewise harmless—if no reasonable view of the properly admitted evidence would permit the jury to find that the defendant had met his burden on each and every element. *See People v. Diaz,* 177 A.D.2d 500, 502, 576 N.Y.S.2d 144, 145 (2d Dep't 1991), *leave to appeal denied,* 79 N.Y.2d 1048, 596 N.E.2d 413, 584 N.Y.S.2d 1015 (1992).

Michael asserts that Mark's confession supplied evidence that harmed Michael's chance to establish the elements of the affirmative defense. According to Michael, that confession was the only evidence that he knew another participant was armed with a deadly weapon. Specifically, Michael asserts that the confession was the only evidence that: (1) he knew of the knife before the robbery; (2) he knew the knife was capable of killing someone; and (3) the shotgun was loaded, as it must have been to qualify as a "deadly weapon." N.Y. Penal Law § 10.-00(12) (McKinney 1987). The state counters that the evidence additional to Mark's confession—especially Michael's own confession—independently made it impossible for Michael to establish the affirmative defense's first, third and fourth elements. We agree with the state's position.

■ Michael could not have established the first element of the affirmative defense: that he "[d]id not . . . in any way . . . aid the commission" of the homicide. N.Y. Penal Law § 125.25(3)(a). He confessed that he herded the victims into the back of the store after his brother Mark said "We're not finished with these guys yet." It was Michael's own idea to tie the victims. He brought cord from Mark's house for that purpose. He tied the victims himself. He then stood and watched as they were stabbed. The "aid in commission" element limits the affirmative defense to those whose participation in the killing was peripheral. *Compare People v. Jenkins,* 148 A.D.2d 640, 641, 539 N.Y.S.2d

100, 101 (2d Dep't) (upholding jury's rejection of affirmative defense where defendant held victim down while victim was being tied, and held pillow over victim's face to muffle screams), *leave to appeal denied,* 74 N.Y.2d 665, 541 N.E.2d 437, 543 N.Y.S.2d 408 (1989) *with People v. Kolomick,* 132 A.D.2d 677, 678–79, 518 N.Y.S.2d 46, 48 (2d Dep't) (overturning conviction where defendant acted as mere lookout), *leave to appeal denied,* 70 N.Y.2d 875, 518 N.E.2d 14, 523 N.Y.S.2d 503 (1987). No reasonable jury could find that Michael did not aid the commission of the homicide.

█ Michael could not have established the third element of the affirmative defense: that he "[h]ad no reasonable ground to believe that any other participant was armed with" a deadly weapon. N.Y. Penal Law § 125.25(3)(c). He confessed that when they entered the store, "[m]y brother, Mark, had a shotgun, and Lemon had the knife;" that Mark carried the shotgun to the store "under the coveralls, by his hip;" and that Mark held the shotgun on the victims while Michael took money from the cash register, and again while Michael tied the victims. Trial testimony established that the shotgun was loaded and operable when it was later seized by the police. Michael also stood by while Mark held a knife to the victims and stabbed them.

Michael claims that the evidence—apart from Mark's confession—did not show when he became aware of the knife, whether the knife was deadly, or whether the shotgun was loaded. These claims are without merit. Michael confessed that Lemon had the knife when they entered the store. We do not believe that a reasonable jury could credit Michael's contention that "this knowledge . . . could have been gained after the robbery." Moreover, Michael stood and watched Mark hold the knife to Paul Fink's throat, declare "You all know what's coming next," and methodically stab all four victims, one by one, while they pleaded for mercy. A defendant cannot claim to have been unaware of a deadly weapon and an intent to inflict harm if he "continued to participate in the robbery after his accomplice displayed the [weapon] and while the fatal assault contin-

ued." *Diaz,* 177 A.D.2d at 502, 576 N.Y.S.2d at 146. Michael claims that his passive behavior during the stabbings does not establish continued participation. But he had just tied the victims' hands and feet; he had nothing left to do but watch, and watch he did. He made no attempt to halt the slayings.

Michael asserts that nothing established his knowledge that the knife was capable of killing someone. We agree with the district court that a " 'long bladed knife,' approximately six or seven inches in length and an inch in width" is a deadly weapon under New York law. Michael's subjective belief about the knife's potential does not matter. The affirmative defense is available only if a reasonable jury could find that the defendant "[h]ad no reasonable ground to believe" that another participant was armed with a deadly weapon.

Michael's confession further established that he knew of the shotgun before the robbery—he knew how his brother carried it to the store—and that he saw the shotgun brandished at the start of the robbery. Michael now asserts that the shotgun was never proved to have been loaded, and that he did not know it was loaded. But trial testimony established that the gun was loaded and operable when recovered. And Michael must establish that a reasonable jury could have found that he had no reason to believe that the gun was loaded. We do not believe that a reasonable jury could have found that he had any reason to believe that the gun was not loaded.

█ Michael could not have established the fourth element of the affirmative defense: that he "[h]ad no reasonable ground to believe that any other participant intended to engage in conduct likely to result in death or serious physical injury." N.Y. Penal Law § 125.25(3)(d). He brought cord to tie up the victims. He knew of the weapons. He continued participating after Mark threatened to "blow [Franklin's] head off," after Mark announced that they were "not finished" with the victims, after Mark held a knife to Paul Fink's throat and declared, "You all know what's coming next," and throughout the victims' pleas for mercy. We

do not believe that a reasonable jury could have found that Michael did not have a reasonable ground to believe that his accomplices intended to cause death or serious injury. *See Diaz,* 177 A.D.2d at 502, 576 N.Y.S.2d at 146.

For these reasons, we conclude that sufficient independent evidence would have caused any reasonable jury to reject Michael's defense to the charge of felony murder. The admission of Mark's confession therefore was harmless error. *See Brecht v. Abrahamson,* — U.S. —, —, 113 S.Ct. 1710, 1722, 123 L.Ed.2d 353 (1993).

Affirmed.